IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JEFFREY A. PLEASANT,

    Plaintiff,

v.                                         Civil Action No. 3:19CV417

HAROLD W. CLARKE, et al.,

    Defendant.

MEMORANDUM OPINION

Jeffrey A. Pleasant, a federal inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action[1] alleging officials in Virginia, where he was previously incarcerated, violated his rights. (ECF No. 1.) Pleasant raises three claims:

Claim One:    Virginia Department of Corrections ("VDOC") Director Harold Clarke and Karen Brown, the former Chairwoman of the Virginia Parole Board ("VPB"), violated Pleasant's due process rights by denying him an opportunity for parole consideration for the three-year period ending in 2017. (Id. at 5.)[2]

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the punctuation, spelling, and capitalization and omits the emphasis in quotations from the parties' submissions.

Claim Two: Wendy Brown, the former Manager of the Court and Legal Services Section at VDOC, denied Pleasant "at least 30 months of jail credit." (Id. at 6.)

Claim Three: Pleasant "was denied a preliminary parole revocation hearing in violation of his due process rights." (Id. at 7.)

This matter is before the Court on the Motion for Summary Judgment jointly filed by Director Clarke, former Chairwoman Brown, and Wendy Brown. (ECF No. 18.) Pleasant has filed a response. (ECF No. 20.) For the reasons stated below, the Defendants' Motion for Summary Judgment will be granted.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere "scintilla of evidence" will not preclude summary judgment. Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." Id. (quoting Munson, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of their Motion for Summary Judgment, Defendants have submitted: (1) an affidavit from Donna M. Shiflett, the current Manager of Court and Legal Services Section at VDOC ("Shiflett Affidavit," ECF No. 19-1); and, (2) an affidavit from

3

Tonya D. Chapman, the current Chairwoman of the VPB ("Chapman Affidavit," ECF No. 19-2).

Pleasant has submitted his own sworn statement in opposition to Defendants' Motion for Summary Judgment. ("Pleasant Declaration," ECF No. 20-1.) At this stage, the Court is tasked with assessing whether Pleasant "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).

The facts offered by an affidavit or sworn declaration must also be in the form of admissible evidence. See Fed. R. Civ. P. 56(c)(4). In this regard, the sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Id. Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). The absence of an "affirmative showing of personal knowledge of specific facts" prevents the consideration of such facts in conducting a summary judgment analysis. EEOC v. Clay Printing Co., 955 F.2d 936, 945 n.9 (4th Cir. 1992) (internal quotation marks omitted).

Pleasant makes a number of statements that are of no value in assessing the propriety of summary judgment. Indeed, Pleasant's

4

declaration is heavily comprised of hearsay and conclusory statements. Most notably, Pleasant states "I believe[] that Wendy K. Brown and Karen D. Brown are both liable and responsible for the violations to my . . . rights as claimed and that I am entitled to the relief requested." (Pleasant Decl. ¶ 17.) This statement, which constitutes the one and only instance where Pleasant even mentions the Defendants in his declaration, is a conclusory and speculative assertion that fails to create a material dispute of fact. See United States v. Roane, 378 F.3d 382, 400-01 (4th Cir. 2004) (internal quotation marks omitted) (citations omitted) ("[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment").

Moreover, Pleasant's declaration relies heavily on things that he maintains were told to him by his "intuitional counselor," Ms. Lawson, while he was incarcerated with the VDOC. (Pleasant Decl. ¶¶ 2-8.) According to Pleasant, Ms. Lawson told him that he "should have been reviewed by the VPB in 2015," and that there "was no jail credit in [his] file." (Id. ¶¶ 4, 6.) Pleasant's declaration makes clear that he had no basis for knowing this information, except for the fact that Ms. Lawson told him. (Id. ¶¶ 3, 5.) Pleasant also maintains that Ms. Lawson told him that there "was no information regarding a preliminary parole revocation hearing" in his records. (Id. ¶ 7.)

5

Simply put, if Pleasant wanted the Court to consider what Ms. Lawson may or may not have to say as evidence, he was required to submit an affidavit from Ms. Lawson, which conformed to the strictures of Rule 56(c)(4). Pleasant's failure to do so renders this portion of his opposition to summary judgment inadmissible because, inter alia, it is conclusory, based on hearsay, and Pleasant has failed to establish a basis for personal knowledge. See Roane, 378 F.3d at 400-01; see also Clay Printing Co., 955 F.2d at 945 n.9; Fed. R. Civ. P. 56(c)(4).

In light of the foregoing submissions and principles, the following facts are established for the purposes of the motion for summary judgment. All permissible inferences are drawn in favor of Pleasant.

## II. SUMMARY OF UNDISPUTED FACTS

Pleasant "became a state-responsible offender on March 11, 1983." (Chapman Aff. ¶ 4.) On March 14, 1985, Pleasant "was first released on discretionary parole." (Id.) On November 8, 1985, Pleasant's parole was revoked, and he was returned to the VDOC. (Id.) On November 18, 1988, Pleasant "was again released on discretionary parole." (Id. ¶ 5.) On March 10, 1989, Pleasant "was returned to VDOC custody," and "his parole was revoked on November 13, 1989." (Id.) "On April 14, 1998, Pleasant was released on discretionary parole for a third time." (Id. ¶ 6.)

At that time, Pleasants had 16 years, 11 months and 21 days' time left to serve ("TLS") on his total sentence. (Shifflet Aff. ¶ 5.)

In 1999, while he was under "the supervision of Chesterfield Probation and Parole, Pleasants committed new crimes." (Id. ¶ 6.) In October 1999, Pleasant was arrested in Chesterfield County. (Id.) In December 1999, Pleasant was arrested in Henrico County. (Id.) On January 25, 2000, Pleasant was arrested in the City of Richmond and taken into local custody. (Id.) On that same day, January 25, 2000, Pleasant was also arrested for a parole violation. (Id.; see also Chapman Aff. ¶ 6.) "On March 30, 2000 the VPB issued a Board Warrant authorizing Pleasant's detention pending further action by the VPB." (Chapman Aff. ¶ 7.)

"On May 9, 2000, the Chesterfield County Circuit Court imposed a 10-year sentence, with 7 years and 3 months suspended, equaling a total net term of active incarceration of 2 years and 9 months, for a conviction of Forgery committed on October 2, 1999." (Shiflett Aff. ¶ 8.) "On March 6, 2001, the Chesterfield County Circuit Court imposed a 12-year sentence for a conviction of Robbery and a 3-year sentence for Use of Firearm in the Commission of a Felony to be served consecutively – both offenses were committed December 7, 1999." (Id. ¶ 9.) Pleasant was not convicted of either the Richmond or Henrico charges. (Id. ¶ 6.) On January 10, 2002, the VPB revoked Pleasant's parole. (Chapman Aff. ¶ 8.)

7

"When an offender enters VDOC custody and is assigned [a] VDOC number, jail personnel forward the offender's jail credit forms to the VDOC . . . pursuant to Virginia Code § 19.2-310." (Shiflett Aff. ¶ 4.) When the VDOC "receives the jail credit forms, it researches the time the offender spent in jail to determine the appropriate application of the credit towards the sentence imposed and then credits the time towards the offender's prison sentence pursuant to Virginia Code § 53.1-187." (Id.)

> Pleasant's three new
> 
> Chesterfield County sentences [we]re computed under the Earned Sentence Credit ("ESC") system, pursuant to Virginia Code §§ 53.1-202.2 through 53.1-202.4. The ESC system applies to felony offenses committed on or after January 1, 1995, and under this system an offender is eligible to earn a maximum of 4.5 days credits for every 30 days served. When an offender has earned ESC credit, it is automatically factored into his release date.

(Id. ¶ 10.) "ESC sentences are parole ineligible pursuant to Virginia Code § 53.1-165.1. Parole ineligible sentences interrupt any parole eligible sentences an offender . . . has not yet satisfied." (Id. ¶ 11.) Parole eligible sentences "are calculated under the Good Conduct Allowance ("GCA") system." (Id.)

When Pleasant received his new sentence from the Chesterfield Court on May 9, 2000, he began serving time to satisfy that ESC sentence and received credit under the ESC system. (Id.) Pleasant "could not earn GCA credits until he satisfied the ESC sentences . . . and he began serving the GCA sentences again."

8

(Id.)  Pleasant "satisfied the ESC sentences and began satisfying the TLS on his GCA sentences on January 7, 2016."  (Id.)

"The time Pleasant served in jail until his transfer into a VDOC facility on July 6, 2001 was applied to his sentence," as "is reflected in the VDOC Return Start Date of January 25, 2000."  (Id. ¶ 12.)  "Because [Pleasant] was not convicted of the charges on which he was detained by local authorities on January 25, 2000, this credit was applied towards his status as a parole violator held in custody on a parole violation."  (Id.)

"In addition to sentence credit, Pleasant received good time credits from January 25, 2000 to January 10, 2002."  (Id. ¶ 13.) "From his Return Start Date on January 25, 2000 until May 9, 2000, Pleasant was awarded good time credits at the rate of 15 days for every 30 days served on his GCA sentences in accordance with VDOC Operating Procedure 830.3."  (Id.)  "Upon receiving an ESC sentence on May 9, 2000, Pleasant began serving the parole ineligible sentences."  (Id.)  As such, "from May 9, 2000 until January 10, 2002, Pleasant was awarded good time credits at the rate of 2.25 days for every 30 days served on his ESC sentences."  (Id.)

"In accordance with OP 830.3, Pleasant was administratively assigned to Class Level 2 on his parole revocation date, January 10, 2002."  (Id. ¶ 14.)  However, Pleasant "continued to serve his ESC sentences," and "earn[ed] good time credit on those sentences at the ESC Class Level 2 rate of 3 days credit for every 30 days

9

served, which was automatically factored into his projected release date." (Id.)

Pleasant's parole eligibility date was "determined by the date he satisfied his parole ineligible sentences." (Chapman Aff. ¶ 9.) "An offenders' discretionary parole eligibility date is calculated by VDOC's electronic offender management database, CORIS." (Id. ¶ 10.) Theoretically, the "parole eligibility date reflected in CORIS . . . automatically trigger[s] the offender's name to . . . be docketed for parole consideration and be placed on the parole interview schedule to be interviewed before their anticipated discretionary parole eligibility date." (Id.) However, "VDOC calculated Pleasant's discretionary parole eligibility date (January 7, 2016) prior to the 2006 changeover to . . . CORIS." (Id. ¶ 11)

"A glitch in the new VPB [computer] module inadvertently prevented Pleasant's name from being picked up in 2016 and automatically scheduled for a parole interview." (Id.) "[A] VPB staff member became aware of this error in early 2018 and manually placed Pleasant on the docket for a parole interview." (Id.) "A case was created for Pleasant on February 20, 2018, and he was placed on the first available interview docket for review on March 5, 2018." (Id.)

On April 10, 2018, the VPB paroled Pleasant "with a special condition that he be released only to his Federal Detainer to begin

10

serving a 622-month sentence on a federal conviction." (Id. ¶ 12.) On July 30, 2018, Pleasant was released from VDOC custody to federal authorities. (Shiflett ¶ 15.) "At that time, Pleasants had 11 years, 5 months and 2 days TLS remaining on his Virginia sentences." (Id.) Pleasant received "all jail credits due to him." (Id.)

### III. ANALYSIS

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). However, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (citations omitted). Instead, the "plaintiff must [demonstrate] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. Thus, in order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)).

11

### A. Claim One

In Claim One, Pleasant alleges that VDOC Director Clarke and former VPB Chairwoman Brown violated Pleasant's due process rights by denying him an opportunity for parole consideration for the three-year period ending in 2017. (ECF No. 1, at 5.) Virginia has created a limited liberty interest in consideration for parole. Burnette v. Fahey, 3:10CV70, 2010 WL 4279403, at *8 (E.D. Va. Oct. 25, 2010). However, "negligent deprivations of life, liberty or property are not actionable under 42 U.S.C. § 1983." See Pink v. Lester, 52 F.3d 72, at 75 (4th Cir. 1995). Pleasant's claim that he was denied parole consideration, at most, sounds in negligence, as opposed to an intentional deprivation of his due process rights. Therefore, Pleasant has failed to establish an actionable due process claim. Moreover, Pleasant fails to demonstrate that either Director Clarke or former Chairwoman Brown "acted personally" in failing to consider Pleasant for parole consideration. Wright, 766 F.2d at 850 (quoting Vinnedge, 550 F.2d at 928). Accordingly, Claim One will be dismissed.[3]

### B. Claim Two

In Claim Two, Pleasant alleges that Wendy Brown, the former Manager of the Court and Legal Services Section at VDOC, denied him "at least 30 months of jail credit." (ECF No. 1, at 6.) The

---

[3] Pleasant concedes that Director Clarke "should be dismissed from this action." (ECF No. 20, at 13.)

12

record before the Court indicates that Pleasant received sentence credit for the time that he spent in local jail and that he was also awarded good time credits for said period as well. (Shiflett Aff. ¶¶ 12-15.) Therefore, Claim Two lacks merit and will be dismissed.[4]

C. Claim Three

In Claim Three, Pleasant alleges he "was denied a preliminary parole revocation hearing in violation of his due process rights." (ECF No. 1, at 7.) As an initial matter, Pleasant does not name a particular Defendant in Claim Three. (Id. at 7-8.) Given that former Chairwoman Brown is the only Defendant that appears to have ever been employed by the VPB, the Court presumes that Pleasant directs this allegation towards her. Once again, Pleasant has

---

[4] Moreover, in Claim Two, Pleasant clearly seeks the invalidation of his criminal sentence. The notion that Pleasant may seek, through a civil suit, the invalidation or alteration of his criminal convictions and sentence, "is legally frivolous under Heck v. Humphrey, 512 U.S. 477 (1994), and related cases." Payne v. Virginia, No. 3:07CV337, 2008 WL 1766665, at *2 (E.D. Va. Apr. 17, 2008). The Supreme Court has explained that Heck and its progeny teach that:

> [A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

13

failed to establish that former Chairwoman Brown was even involved in deciding whether or not to provide him with a preliminary hearing, much less that she personally and affirmatively played any part in denying him said hearing. Wright, 766 F.2d at 850 (quoting Vinnedge, 550 F.2d at 928).

Moreover, Claim Three is clearly untimely. Because no explicit statute of limitations exists for 42 U.S.C. § 1983 actions, the courts borrow the personal injury statute of limitations from the relevant state. Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (citing Wilson v. Garcia, 471 U.S. 261, 266-69 (1985)). Virginia applies a two-year statute of limitations to personal injury claims. See Va. Code Ann. § 8.01-243(A) (West 2021). Hence, Pleasant should have filed his Complaint within two years from when the underlying claim accrued. "A claim accrues when the plaintiff becomes aware of his or her injury, United States v. Kubrick, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." Almond v. Sisk, No. 3:08cv138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (omission in original) (quoting Nasim, 64 F.3d at 955).

In his Complaint, Pleasant states that "on or about August 27, 2001, he was notified that he was scheduled to appear before the VPB representative on September 5, 2001." (ECF No. 1, at 8.) Pleasant states that he "asked for an attorney" to assist him with

said meeting because, inter alia, "he was not provided a preliminary hearing within a reasonable time." (Id.) Thus, Pleasant has demonstrated that he had knowledge of this putative claim in August of 2001, at the latest. This matter was not initiated until June 5, 2019. (ECF No. 1.) As such, Claim Three is well over a decade late. Therefore, Claim Three is barred by the statute of limitations. Accordingly, Claim Three will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment jointly filed by the Defendants (ECF No. 18) will be granted. Claims One, Two, and Three will be dismissed. The action will be dismissed.

The Court notes that Pleasant filed his own cursory Motion for Summary Judgment. This Motion was not properly supported by verified, admissible evidence and failed to articulate how the facts and/or law supported judgment in Pleasant's favor. Thus, Pleasant's Motion for Summary Judgment (ECF No. 13) will be denied. Pleasant's Motion to Expedite (ECF No. 24) will be denied as moot.

An appropriate Order will accompany this Memorandum Opinion.

/s/ REP
Robert E. Payne
Date: February 16, 2021
Richmond, Virginia
Senior United States District Judge